UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

VAUGHN R. WEED,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-10-0300-CI

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 17, 20.) Attorney Maureen J. Rosette represents Vaughn R. Weed (Plaintiff); Special Assistant United States Attorney Jeffrey R. McClain represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

**JURISDICTION**

Plaintiff protectively filed for Supplemental Security Income (SSI) on February 12, 2009. (Tr. 11.) He alleged disability due to arthritis in knees and elbows, with an onset date of January 1, 2008. (Tr. 142.) Benefits were denied initially and on reconsideration. Plaintiff timely requested a hearing before an administrative law judge (ALJ), which was held before ALJ Gene

Duncan on March 3, 2010. (Tr. 23-74.) Plaintiff, who was represented by counsel, medical expert Donna M. Veraldi, Ph.D., and vocational expert Frank Lucas (VE) testified. The ALJ denied benefits on May 28, 2010, and the Appeals Council denied review. (Tr. 1-3, 11-19.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the

administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S.

137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 52 years old and living with his mother in a mobile home. (Tr. 26, 49.) He testified he attended school to the 10th grade. (Tr. 29.) Although he reported no special education classes in his application (Tr. 146), at the hearing, he testified he had been placed in special education classes since first grade. (Tr. 30-31.) He had past work experience as a lumber laborer and food server at a casino. (Tr. 57-58, 143.) He reported he stopped working in 1997 because he was incarcerated. (Tr. 142.) He testified he could no longer work because his felony record prevented him from finding a job. (Tr. 29.) He also testified pain from arthritis in his knees and elbows made it difficult for him to stand, sit, or walk for any length of time. (Tr. 30, 40-43.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Duncan found Plaintiff had not engaged in substantial gainful activity since the SSI application date of February 12, 2009. (Tr. 13.) At step two, he found Plaintiff had the medically determinable severe impairments of "chondromalacia, bilateral knees; right elbow epicondylitis; pedophilia; and borderline intellectual functioning." (*Id.*) He found alleged diabetes caused no significant problems and was, therefore, non-severe. (*Id.*) At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 13-14.) At step four, the ALJ determined Plaintiff had the residual functional capacity (RFC) to perform less than the full range of light work due to non-exertional physical and mental limitations. (Tr. 15.) In his step four findings, ALJ Duncan summarized the medical evidence, a statement from Plaintiff's mother, and Plaintiff's testimony, made credibility findings, and concluded Plaintiff's statements regarding the severity of his functional limitations were not credible to the extent they were inconsistent with the RFC findings. (Tr. 15-18.) Based on the RFC, Plaintiff's credible testimony, and VE testimony, the ALJ concluded Plaintiff could not perform his past relevant work as a food server. (Tr. 18.) At step five, the ALJ considered VE testimony and found Plaintiff could perform other jobs in the national economy. He concluded Plaintiff was not disabled as defined by the Social Security Act from February 12, 2009, through the date of his decision. (Tr. 18-19.)

## ISSUES

The question is whether the ALJ’s decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he: (1) failed to develop the record by obtaining additional medical expert testimony; (2) found Plaintiff could perform light level work; and (3) improperly rejected examining medical source opinions. (ECF No. 14 at 9-18.) Plaintiff contends he is capable of sedentary work only and should have been found disabled under the Medical-Vocational Guidelines (Grids). (ECF No. 18, 22.)

## DISCUSSION

### A. Evaluation of Medical Evidence

The record shows medical expert testimony was taken at the hearing to establish the presence of a medically determinable mental impairment and address the variances in intelligence testing scores in the record. (Tr. 34.) Donna M. Veraldi, Ph.D., testified IQ scores reported in psychological evaluations by Rachael McDougall in 2009, and Lance Harris, Ph.D., in 2005, were ambiguous and conflicting. (Tr. 34-35.) As stated by Dr. Veraldi, the diagnosis of pedophilia was not a listing impairment, and other diagnoses were not supported by objective findings. (Tr. 36.) She concluded the record before her was inconclusive as far as mental diagnoses were concerned and recommended a full neuropsychological evaluation with testing to determine if Plaintiff had cognitive deficits that would affect his ability to work. (Tr. 36-37.)

Plaintiff argues the ALJ erred by not seeking supplemental medical expert testimony after additional evidence was received. He

also argues the ALJ did not give specific reasons for rejecting the opinions of Dr. McDougall and post-hearing examining psychologist John Arnold, Ph.D. (ECF No. 18 at 18, ECF No. 22 at 2.)

**1. Supplemental Medical Expert Testimony**

A review of the hearing transcript indicates the ALJ acknowledged the incompleteness of the psychological reports in the record, and confirmed a supplemental examination was scheduled for Plaintiff the week following the hearing. (Tr. 37-38.) Although the possibility of seeking additional medical expert testimony was discussed, the ALJ specifically stated he did not know if he was going to have another hearing, but considered sending the report with interrogatories to Dr. Veraldi. (Tr. 38.) The ALJ also indicated Plaintiff's representative would receive the report and could send questions directly to Dr. Veraldi. (*Id.*)

On March 9, 2010, Plaintiff was examined by James Bailey, Ph.D. (Tr. 352-57.) In addition, Plaintiff's representative arranged for a psychological evaluation by Dr. Arnold, on April 9, 2010. (Tr. 372-83.) The post-hearing reports were reviewed by the ALJ and addressed in his May 28, 2010, decision without conducting a supplemental hearing or sending interrogatories to Dr. Veraldi. (Tr. 17, 199.) However, the ALJ's decision to proceed in this manner is not legal error.

An ALJ's decision to call a medical expert to assist in evaluating conflicting medical evidence is within his or her discretion. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen,* 881 F.2nd 747, 753 (9th Cir. 1989)). Further because the resolution of conflicts in the medical evidence

is the responsibility solely of the ALJ, an ALJ is not required to substitute the judgment of a non-examining medical expert for his own after review of the entire record. 20 C.F.R. § 416.927(f)(2); *Sample v. Schweiker*, 694 F. 2d 639, 642 (1982). The record shows ALJ Duncan sent a copy of Dr. Bailey's report to Plaintiff's representative on March 31, 2010, advising her that she could submit written questions or request a supplemental hearing if a request were made within 10 days of the date she received the evidence and notice. The notice clearly states if no request were received, the evidence would be included in the record. (Tr. 199-200.) There is no indication that Plaintiff's representative requested additional proceedings. Therefore, Plaintiff's assertion that the ALJ ignored Plaintiff's request for a supplemental hearing is without merit. (ECF No. 18 at 16.)

Having a fully developed record supported by recent objective psychological testing and narrative reports from two acceptable examining medical sources, and receiving no formal request for a supplemental hearing, the ALJ reasonably determined additional proceedings for medical expert testimony would not be helpful. His final decision reflects consideration the record in its entirety, including those opinions received after the ALJ hearing. Plaintiff identifies no ambiguity or insufficiency in the evidence that requires remand for further development of the record. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (within ALJ's discretion to develop the record to resolve a conflict or clear up any ambiguity in the record).

**2. Rejection of Examining Medical Source Opinions.**

In evaluating a disability claim, the ALJ must consider all medical evidence provided. 20 C.F.R. § 416.927(d). A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Id.*; *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004). If a treating or examining physician's opinions are not contradicted, they can be rejected by the decision-maker only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion with "specific," "legitimate" reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv*., 44 F.3d 1453, 1463 (9th Cir. 1995). Where an ALJ determines a treating or examining physician's stated opinion is materially inconsistent with the physician's own treatment notes, legitimate grounds exist for rejecting the inconsistent, unsupported opinion. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Plaintiff argues the ALJ's reasons for rejecting the opinions of Drs. McDougall and Arnold were not sufficiently specific to meet the legal standards governing these proceedings. (ECF No. 18 at 17.) As found by the Ninth Circuit, in making findings, the ALJ "'is entitled to draw inferences logically flowing from the evidence.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)(*quoting Sample*, 694 F.2d at 642). If a finding is a

reasonable interpretation of the evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Although Plaintiff does not specifically identify which opinions were improperly rejected, a careful review of the decision shows the ALJ specifically gave little weight to "marked to severe limitations in significant aspects of cognitive and social functioning." (Tr. 17.) The court is thus able to review the record to determine if the ALJ's reasons for doing so are legally sufficient and supported by substantial evidence.

The ALJ gave two legitimate reasons for giving little weight to the marked to severe limitations assessed by Drs. McDougall and Arnold: (1) they were not consistent with the psychologists' respective narrative findings and (2) they were not consistent with Plaintiff's own report of daily activities. (Tr. 17, 15-16, Tr. 312, 382-83.) These are specific, legally sufficient reasons for disregarding a medical source opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Nguyen,* 100 F.3d at 1464. Further, the record in its entirety supports the ALJ's reasoning. For example, in March 2009, Dr. McDougall's sole diagnosis (based on interview) was pedophilia. (Tr. 258.) In her accompanying narrative, she referenced IQ test results from Dr. Lance Harris, Ph.D.[1] whose opinions were given "significant weight" by the ALJ.

---

[1] Dr. Harris, who evaluated Plaintiff in 2005, noted Plaintiff was fully independent in his activities of daily living, as evidenced by his ability to care consistently for his mother. Based on intelligence testing, he assessed a full scale IQ of 81, verbal

Dr. McDougall suggested Plaintiff be tested for borderline intellectual function "to determine cognitive strengths and limitations due to organic syndrome." (Tr. 262-63.) Consistent with Dr. Harris' findings, she also observed Plaintiff was independent in his daily activities. She noted Plaintiff's report that he did not have problems with math in his past job at a casino, served in the National Guard with an honorable discharge, did not exhibit symptoms of an acute or chronic mental illness, and complained primarily of medical problems. (Tr. 263.)

In April 2009, Dr. McDougall interpreted results from new IQ testing. (Tr. 310-16.) Specifically, they reflected a full scale score of 77, performance score of 84, and verbal score of 83. (Tr. 247, 310, 354.) In her narrative, Dr. McDougall interpreted Plaintiff's verbal and nonverbal reasoning abilities in the low average range and his general cognitive ability within the borderline range of intellectual functioning.[2] (Tr. 314-15.) The ALJ did not reject these narrative conclusions, which were generally

---

score of 79, and performance scored of 86. (Tr. 247.) Dr. Harris also conducted a mental status exam and opined Plaintiff could "relate adequately to work peers and the general public and could cope with normal work pressures and expectations." (Tr. 252.)

[2] It is noted on review that in April, Dr. McDougall also included a new diagnosis of dementia, apparently based on a self-reported head injury. She opined that Plaintiff's self-report "suggests lifetime cognitive deficits perhaps exacerbated by head trauma." (Tr. 310.) However, as discussed below, additional testing by Dr. Bailey does not support this speculation.

consistent with those from Dr. Harris. In March and April 2009, Dr. McDougall rated listed mental disorders with "none" to "mild" severity in all categories except "social withdrawal" and "physical complaints." (Tr. 311.) However, the majority of cognitive and social functional limitations in the check box form attached to the narrative are rated "marked" or "severe," with a conclusory explanation that testing shows "cognitive deficits." (Tr. 312, 313.) The ALJ reasonably found these functional assessments were not consistent with the narrative portion of Dr. McDougall's reports or Plaintiff's self-reported abilities.

Regarding Dr. Arnold's evaluation, the ALJ likewise found it to be internally inconsistent and inconsistent with Plaintiff's own report of activities. (Tr. 17.) As discussed above, these reasons are sufficiently specific in the context of the entire decision, and are supported by substantial evidence. Although Dr. Arnold did not do formal IQ testing, he conducted an interview, a mental status exam, a Personality Assessment Inventory (PAI) and administered the MMPI-2 and MMPI-2RF. (Tr. 374.) Dr. Arnold's narrative report indicated the following: Plaintiff reported his reading ability did not prevent him from serving as an E-4 in the National Guard. He reported independent living skills, including taking care of his mother, doing household tasks, cooking and shopping. He reported watching television for leisure. (Tr. 375.) Dr. Arnold also observed Plaintiff had generally adequate concentration during the assessment and responded to MSE items in a manner consistent with borderline intellectual functioning. (Tr. 375.) Dr. Arnold did not advise a protective payee. (*Id.*) The ALJ did not err in rejecting

the marked to severe functional limitations assessed by Dr. Arnold. *Thomas*, 278 F.3d at 957.

Other medical evidence in the record amply supports the ALJ’s conclusion. For example, in March 2010, Dr. Bailey administered additional intelligence testing (WAIS-IV), Trails A and B (with one error), and the Minnesota Multiphasic Personality Inventory (MMPI-2). (Tr. 352-56.) Intelligence scores ranged from low average range to the average range of functioning. (Tr. 354.) Memory scores were “a little better than IQ,” with no indication of memory malingering. (Tr. 355.) Dr. Bailey concluded the scores did not indicate malingering, dementia, or a pattern for learning disabled. (Tr. 354-55.) As noted by the ALJ, Dr. Bailey concluded Plaintiff could perform simple, repetitive tasks with few academic demands, with some superficial contacts. This is consistent with Dr. Harris’ assessment of mild to moderate limitations in most cognitive and social functioning. (Tr. 17, 356, 252.) The ALJ did not err in giving significant weight to the internally consistent reports based on objective testing. *Bayliss*, 427 F.3d at 1216-17.

In conclusion, review of the psychological reports, as well a Plaintiff’s own testimony, indicates the ALJ’s evaluation of the evidence is supported by substantial evidence. Lack of internal consistency and inconsistency with claimant’s own testimony are specific and legitimate reasons for rejecting medical source findings. *Tommasetti*, 533 F.3d at 1041 (incongruity in medical sources evaluation). The ALJ’s findings also are sufficiently specific to allow review and meet the legal standards governing these proceedings; therefore, the court may not second guess his

findings. *Thomas* 278 F.3d at 959.

**B. RFC Determination**

Citing *SSR* 83-10, (*Determining Capability To Do Other Work - The Medical-Vocational Rules of Appendix 2*),[3] Plaintiff argues the ALJ's RFC determination that he is restricted to four hours of standing or walking in an eight hour day requires a finding Plaintiff is disabled according to section 201.10 of the Grids. He contends the ALJ improperly disregarded VE testimony that this walking/standing restriction limited Plaintiff to sedentary work.[4] (ECF No. 18 at 15.)

The ALJ's final RFC determination (and hypothetical propounded

---

[3] *Social Security Ruling* 83-10 provides guidance to the adjudicator at step five, when a claimant has met his step four burden to show his impairments prevent him from performing past work. Social Security Rulings are issued to clarify the Commissioner's regulations and policy. They are not published in the federal register and do not have the force of law. However, under the case law, deference is to be given to the Commissioner's interpretation of the Regulations. *Ukolov v. Barnhart*, 420 F.3d 1002 n.2 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

[4] If Plaintiff were found to be limited to sedentary work and unable to perform past work, the ALJ would be obliged to proceed to step five. Using the Medical-Vocational Guidelines as a framework, a finding of "disabled" would be directed for an individual of Plaintiff's age and education. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Section 201.10.

at the hearing) is as follows:

> [C]laimant has the residual functional capacity to perform less than a full range of light work as defined in 20 C.F.R. 416.967(b). He can lift 10 pounds frequently and 20 pounds occasionally. He can stand/walk about 4 hours in an 8 hour day. He can sit about 6 hours in an 8 hour day. He can occasionally bend, crouch, and kneel. He cannot climb ladders. He cannot crawl and he cannot operate vibrating equipment. He should be able to stand and stretch every 45 minutes. He should not be in charge of the safety of others. He should have no contact with children. He should work independently and should have a fair, objective supervisor. He cannot perform repetitive reaching or handling with the right upper extremity. He can have superficial contact with coworkers and the general public. He can perform simple repetitive task [sic]. He would be off task about 5% of the workday. He should not be required to perform extended reading for content and comprehension. He should not have any high stress work duties. He should have hands-on training for changes in the work setting. He would be absent about once each month. He should not make executive decisions. He can work at an average, but low average, pace.

(Tr. 15.)(Emphasis added.)

Under the Regulations and *SSR* 83-10, light work requires

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. 416.967(b). (Emphasis added.)

"Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 416.967(a). "Occasionally" is defined by the Commissioner as "occurring from very little up to one-third of the time." *SSR* 83-10. For example, "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2

hours of an 8-hour workday." *Id*. The ALJ's RFC determination restricts Plaintiff's standing and walking to four hours (more than occasionally), or one half of the work day; therefore, it does not meet the sedentary criteria. 20 C.F.R. § 416.967(a). Further, Plaintiff retains the light level capacity to lift and carry 10 pounds frequently and 20 pounds occasionally. The ALJ did not err in finding Plaintiff retains the ability to do less than a full range of light work.[5]

The Commissioner has issued a policy ruling specifically addressing this type of situation. *SSR* 83-12 (*Capability to Do Other Work - - the Medical-Vocational Rules as a Framework For Evaluating Exertional Limitations . . . Between Ranges of Work*). Where it is determined that a claimant's RFC does not permit him to perform past relevant work and contains components of light and sedentary work, the ALJ uses the services of a vocational expert to determine if the claimant can do other jobs performed in the national economy. 20 C.F.R. §§ 404.1560(b)(2)), 416.960(b)(2); *see also Moore v. Apfel*, 216 F.3d 864, 870-71 (9th Cir. 2000); *SSR* 83-12

[5] The VE's initial testimony that Plaintiff was limited to sedentary work based on the four hour standing/walking restriction is not controlling. There is no requirement that an ALJ defer to the judgment of an expert where, as here, the Commissioner's policy rulings and the Regulations contradict the VE testimony. See *Sample v. Schweiker*, 694 F. 2d 639, 642 (1982). Further, upon thorough questioning by the ALJ, the VE testified there were light jobs Plaintiff could perform with the four hour standing restriction. (Tr. 61-69.)

(at step five, vocational expert testimony necessary where RFC falls between two levels).

Here, the ALJ properly consulted the VE regarding light work that could be performed with the limitations the ALJ identified in the hypothetical question. The VE testified that the hypothetical individual could perform several light level jobs that required no more than four hours of standing. (Tr. 68.) The VE also stated his testimony is consistent with DICOT information, *SSR* 00-4p. *Bray v. Commissioner of Social Security Admin.,* 554 F.3d 1219, 1230 n.3 (9th Cir. 2009). Although Plaintiff may not agree with the VE's testimony, he offers no expert testimony or documentation to rebut the vocational specialist testimony, which was necessary and appropriate at step five to determine whether Plaintiff could meet the exertional and non-exertional demands of other work. 20 C.F.R. §§ 404.1560(b)(2)), 416.960(b)(2); *see also Moore*, 216 F.3d at 870-71. Even though the evidence may be susceptible to Plaintiff's interpretation, the medical record, Plaintiff's daily activities and credible testimony, *SSR* 83-12 and VE testimony support the ALJ's finding that there are jobs Plaintiff can still perform. *Andrews,* 53 F.3d at 1039-40. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(ECF No. 20)** is **GRANTED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment

shall be entered for Defendant, and the file shall be **CLOSED**.

DATED February 28, 2012.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18